CORNELIUS SHINNERS, Respondent, v. WILLIAM C. MULLINS, Appellant.

**Kansas City Court of Appeals, March 1, 1909.**

1. **MASTER AND SERVANT: Negligence: Usual Appliances.** A master is bound to use reasonable care to furnish safe appliances, but is not bound to furnish any particular one nor the newest and best one.

2. ———: ———: ———: **Fellow-Servant.** *Held*, on the evidence that the servants were not incompetent and the negligence in permitting a brick to fall on a mason at the bottom of a sewer was the act of a fellow-servant and the master was not liable.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

REVERSED.

*Pierre R. Porter* for appellant.

(1) The sole cause of the accident was the negligence of Jefferson, a fellow-servant with plaintiff, in failing to properly adjust the sling. And there was no evidence that Jefferson was not competent. Bannon v.

Sanders, 68 Ill. App. 167; Blazinski v. Perkins, 77 Wis. 12; Show v. Const. Co., 102 Mo. App. 666; Schott v. Bank, 49 App. Div. (N. Y.) 503, 63 N. Y. Supp. 631; Roth v. Eccles, 28 Utah 456. (2) Even though the evidence had shown that the box was safer than the sling, or even that the sling was not reasonably safe, yet since all of the evidence showed that the sling was in ordinary and general use, there can be no presumption of negligence arising from its use, and the court, therefore, erred in submitting to the jury the question of defendant's negligence in the use of the sling as an appliance. Chrismer v. Telephone Co., 194 Mo. 208; Brands v. Car Company, 112 S. W. 514; Robinson v. Railway, 112 S. W. 730; Bohn v. Railway, 106 Mo. 433; Steinhauser v. Sproul, 127 Mo. 562. (3) There was no evidence upon which to justify the submission to the jury of the question of whether the defendant was negligent in leaving the selection of bricks to be lowered to incompetent boys. Minnier v. Railway, 167 Mo. 112; Smillie v. St. Bernard Dollar Store, 47 Mo. App. 402; Rickert v. Stephens, 133 Pa. St. 538; Gibson v. Railway, 46 Mo. 163; Kersey v. Railway, 79 Mo. 362; Lee v. Detroit Wks., 62 Mo. 565; Roblin v. Railway, 119 Mo. 476; McDermott v. Railway, 73 Mo. 516.

*Henry J. Latshaw,* for respondent, submitted argument.

BROADDUS, P. J.—This is an action for damages for injuries plaintiff sustained on his person while working for defendant. The plaintiff, an experienced brickmason, was injured while he was standing in a sewer which was being constructed by defendant by a brick which fell from a quantity of bricks and which hit him on the top of the head causing a severe wound.

In order for a proper understanding of the case, it is necessary to state the manner in which the sewer was being constructed at the time in question. After the trench for the sewer had been dug, it was the duty

of the brickmasons to go to the bottom of it and erect the walls. The bricks for the purpose were lowered by means of a rope with a hook on the end from a scaffold about sixteen feet square built upon the surface of the ground and which extended about half way over the sewer which was about seven and one-half feet deep. The bricks were placed in a pile in the following manner. Two boys, engaged for the purpose, would place two bricks lengthwise upon the edge of the scaffold and would then place other bricks horizontally on the tops of them until they had constructed a pile about four feet high. A man would then adjust the pile and place the rope around it which was caught in the hook which acted as a slipknot and thus the bricks were held together. Then the man would lower the pile thus secured to a dumper in the bottom of the sewer, who would receive it and release the rope, which was drawn up again and the operation continued as long as it was necessary.

On the 23rd day of April, 1906, the plaintiff went to work as usual in the trench laying bricks and continued work until about 10 o'clock when he received an injury. It was the custom to "stock up," that is, to lower a quantity of bricks before the masons began work in the morning and again before they went to work after their noon meals. The material stocked up would last from fifteen to twenty minutes; after that it was customary to lower bricks while the masons were at work. It was while lowering bricks under the latter conditions that plaintiff was hurt.

The plaintiff alleged many grounds of negligence upon the part of defendant, but relies chiefly upon the following for recovery, viz.: "Defendant carelessly and negligently lowered said bricks and caused them to be lowered by means of a rope and hook, or noose, or sling, thereby making it dangerous to the lives and limbs of employees working at or near the bottom of said sewer and thereby making it unusually and un-

necesssarily dangerous to employees, especially plaintiff, working at or near the bottom of said sewer. Defendant carelesssly and negligently forced and compelled plaintiff and other employees to work in the bottom of said sewer immediately under the place where said bricks were being lowered, while said bricks were being lowered as above set forth. Failure to have bad bricks and defective bricks of improper size culled out."

There was evidence tending to show that at the time of the injury the defendant was present within a directly over the heads of the masons at work, and that he saw the men while they were lowering the bricks directly over the heads of the masons at work; and that he saw the brick fall and strike plaintiff. There was also evidence tending to show that there was another and safe means of lowering bricks by the use of iron boxes, but that defendant allowed his employees to use the rope or the boxes as they pleased. The boxes were not often used, except where some of the bricks were broken; that the only reason for using the rope in preference to the boxes was that the former was the most expeditious and that the boxes being heavier required more power in their use. However, the defendant introduced much evidence to the effect that the rope with the noose was most generally used by contractors in such work, and it may be said that such evidence stands practically uncontradicted.

Jefferson, the man who placed the rope around the pile of bricks and lowered them and who testified for the plaintiff, explained what caused the brick to slip from the sling, viz.: that there was a crooked brick in the pile "that had a knot on it which held it higher than the other bricks and that didn't give me room to tighten it." He further explained that, "When two bricks are put in to tie the hack, if one is a little thicker than the other, the thick brick will take most of the strain on itself, and quite often it is the case that the thin brick will slip out."

The evidence being that the method by which the bricks were lowered was one in general use and reasonably safe, as a matter of law, it must be conceded that the defendant was not negligent in that respect. The fact that there was a safer method for doing the work did not make it incumbent upon defendant to adopt it. "A master is bound to use reasonable care to furnish his servant safe appliances, but is not bound to furnish any particular appliances nor the newest and best appliances; his duty being performed when he furnishes those of ordinary character and of reasonable safety." [Brands v. St. Louis Car Co., 213 Mo. 698, 112 S. W. 511; Chrismer v. Telephone Co., 194 Mo. 189.] Such, we believe, is the holding of all the appellate courts of the State.

The cause of the accident was the negligence of Jefferson who lowered the bricks at the time. He saw the defective brick and knew that on account of its defect he could not properly secure the pile so as to prevent one of them from falling out. Conceding that it was negligence in the boys who placed the brick in question in the pile, there is no evidence that they were incompetent for the business. And their act, as well as that of Jefferson, was the act of fellow-servants. There is nothing to show, notwithstanding defendant was present, that he knew of the defective brick in the pile. And we are of the opinion that the approximate and direct cause of the injury was the negligence of the man Jefferson, plaintiff's fellow-servant. Therefore, defendant was not liable for his act.

The court should have instructed the jury to return a verdict for the defendant as requested. Reversed. All concur.